IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **THE GRAY CASUALTY & SURETY COMPANY,** | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. **3:23-CV-2511-L** |
| **3i CONTRACTING, LLC and MICHEAL WILLIAMS,** | § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the court is The Gray Casualty & Surety Company's Verified Motion for Injunctive Relief ("Motion") (Doc. 2), filed November 10, 2023.  The Gray Casualty & Surety Company ("Plaintiff" or "Surety") seeks a preliminary injunction against Micheal Williams and his company 3i Contracting, LLC (collectively, "Defendants" or "Indemnitors") to compel enforcement of the terms of an Indemnity Agreement in which Plaintiff is the "Surety" and Defendants are the "Indemnitors" with respect to bonds issued by Plaintiff for construction projects.  Also before the court is a letter signed by the paralegal of Steven K. Cannon, Plaintiff's attorney, which was filed on January 2, 2024, and requests that the court "[p]lease accept this filing as a request for hearing on the Motion." Doc. 14. Plaintiff's Motion (Doc. 2) is **denied without prejudice**, and Plaintiff's request for a hearing (Doc. 14) is **denied** for the reasons herein explained.

## I.    Factual and Procedural Background

On November 10, 2023, Plaintiff brought this action against Defendants by filing a Verified Complaint to recover for breach and specific performance of the parties' Indemnity Agreement, pursuant to which Defendants agreed to indemnify and collateralize Plaintiff in an

amount deemed necessary by it to protect itself against losses already incurred and anticipated in

connection with the following bonds:

| Bond Number | Obligee | Project |
|---|---|---|
| GS25400040 | Dallas ISD | Haskell Innovation Center |
| GS25400052 | Dallas ISD | Carter High School-Elevator Addition |
| GS25400027 | Dallas College | Dallas College Cedar Valley Campus-One Stop Shop |
| GS25400039 | Dallas County | Dallas County South Government Center |
| GS25400046 | Dallas County | Frank Crowley Garage Renovation |
| GS25400047 | Dallas County | Sallyport Garage Refresh |

Pl.'s Compl. 5-6. In addition, Plaintiff seeks to compel enforcement of a provision in the

Indemnity Agreement that governs access to books and records upon demand by the Surety.

In support of its claims for breach and specific performance of the Indemnity Agreement

and its request for injunctive relief, Plaintiff states as follows in its Verified Complaint:

**The Surety Incurred Loss and Anticipated Loss**

17. As of November 1, 2023, the Surety has received and/or is presently facing potential losses in the amount of $546,712.05 plus interest and attorneys' fees on the Bonds (hereinafter referred to as the "Claims"). Additionally, as of November 1, 2023, the Surety has incurred additional expenses in furtherance of its investigations into and defense of the Claims. The Surety anticipates an additional loss, excluding expenses and attorney fees, in an amount in excess of $546,712.05, to further resolving the pending Claims ("Anticipated Loss").

18. By virtue of these Claims, posting of collateral and other obligations of the Indemnitors have been triggered under the Indemnity Agreement.

19. By letter dated September 29, 2023, attached hereto as ***Exhibit "C"***, the Surety demanded that the Indemnitors jointly or severally (i) deposit cash or other collateral satisfactory to the Surety totaling $464,593.25, an amount that equaled the amount of the liability that had been asserted against the Surety and/or otherwise reserved by the Surety in connection with claims and demands under the Bonds to protect the Surety from all potential losses under the Bonds, and (ii) provide the Surety with full and complete access to the Indemnitors' books and records for a financial review as allowed by the Indemnity Agreement. The Surety demanded that these items be provided within five (5) days of the September 29, 2023 letter.

20. Again, by letter from counsel dated October 26, 2023, attached hereto as ***Exhibit "D"***, the Surety demanded collateral from the Indemnitors in the amount of $566,712.05, representing the amount that the Surety deemed at that time to protect it from actual and anticipated Loss. The October 26th letter also again demanded full and free access to the Indemnitors' books and records.

21. Despite the Surety's demands, the Indemnitors have failed to deposit any collateral with the Surety relative to Claims on the Bonds in violation of the Indemnity Agreement. Further, the Indemnitors have failed to provide the Surety with full and free access to its books and records.

22. As of the date of this filing, the Indemnitors refuse to do anything to indemnify and hold the Surety harmless. Because the Indemnitors refuse to exonerate, indemnify, and hold harmless the Surety or post collateral security to the Surety, the Surety will face imminent harm, irreparable injury and will have no adequate remedy at law with respect to reimbursement for any losses under the Bonds.

23. All conditions precedent to recovery by the Surety from the Indemnitors have occurred or have been performed.

Pl.'s Compl. 5-6.

Plaintiff requests the following relief in its Complaint for the claims asserted in this action:

1. Judgment against Defendants 3i Contracting, LLC and Micheal Williams, jointly and severally, in the amount of damages incurred by the Surety;

2. Judgment against Defendants 3i Contracting, LLC and Micheal Williams, jointly and severally, for amounts necessary to exonerate the Surety from all liability asserted against it;

3. Judgment against Defendants 3i Contracting, LLC and Micheal Williams, jointly and severally, compelling them to perform their specific obligations to indemnify or exonerate the Surety under the Bonds;

4. Judgment against Defendants 3i Contracting, LLC and Micheal Williams, jointly and severally, compelling them to perform their specific obligations to furnish to the Surety with full and free access to their books and records;

5. Judgment against Defendants 3i Contracting, LLC and Micheal Williams, jointly and severally, compelling them to post collateral to the Surety in the sum of $566,712.05, plus additional funds necessary to secure the loss, costs, expenses,

court cost, and counsel fees expended and/or to be expended as necessary in order to enforce the Indemnity Agreement;

6. Pre-judgment and post judgment interest at the maximum permissible at law or in equity;

7. Costs of this suit; and

8. Such other and further relief to which the Surety is justly entitled.

*Id.* at 12.

As indicated, Plaintiff also filed its Motion and request for injunctive relief (Doc. 2) on the same date it brought this action against Defendants.  Plaintiff's verified Motion and pleadings correctly note that it sent two letters to Defendants on September 29, 2023, and October 26, 2023. The evidence submitted in support of Plaintiff's Motion, however, does not support the assertions in paragraph 19 of its Verified Complaint or paragraph 15 of its Motion regarding its alleged demand that Defendants deposit cash or other collateral totaling $464,593.25. Rather than demanding that Defendants post collateral security and provide access to their books and records within five days, the September 29, 2023 letter from Plaintiff's counsel simply notifies Defendants that it has several bond claims, quotes various provisions of the parties' Indemnity Agreement that set out the parties' respective contractual rights and obligations, and requests that Defendants "[p]lease contact me within five (5) days to discuss the Irrevocable Letter of Credit as well as the books and records review of the 3i and the Indemnitors."  Pl.'s App. (Doc. 2-1 at PageID 211).[1]  The top of the first page of the letter also states "Re: Collateral Demand."  *Id.* at PageID 205. This mere reference to collateral demand, however, does not support Plaintiff's allegation that it demanded Defendants to provide cash or other collateral and access to books

___

[1] Plaintiff's 102-page appendix is not numbered sequentially, and its Motion does not cite to specific appendix pages as required by the Local Rules.  *See* L.R. 7.1(i)(4), 7.2(e). The citations in this opinion, therefore, refer to the electronic PageID numbers.

**Memorandum Opinion and Order – Page 4**

and records within five days of the letter.  Thus, Plaintiff's first demand and five-day deadline for Defendants to post collateral security in the amount of $566,712.05 was not provided until October 26, 2023.  Ten days after expiration of the five-day deadline in this letter, Plaintiff filed this lawsuit and its Motion.

The relief sought by Plaintiff in its Motion is similar to that sought in its Complaint. Specifically, Plaintiff requests that the court grant its Motion for injunctive relief and order as follows:

1. Compels Defendants 3i Contracting, LLC and Micheal Williams to perform their specific obligations to indemnify or exonerate the Surety under the bonds;

2. Compels Defendants 3i Contracting, LLC and Micheal Williams to post collateral to the Surety in the sum of $566,712.05, plus additional funds necessary to secure the loss, costs, expenses, court costs and counsel fees expended and/or will be expended as necessary in order to enforce the Indemnity Agreement;

3. Compels Defendants 3i Contracting, LLC and Micheal Williams to perform their specific obligations to furnish the Surety with full and free access to their books and records;

4. Allows the Surety to use such collateral in accordance with the terms and conditions of the Indemnity Agreement; and

5. Such other and further relief to which the Surety may be justly entitled.

Pl.'s Mot. 21-22 (emphasis added).  Although Plaintiff noted in its September 29, 2023 letter to Defendants that their Agreement permits Defendants to post collateral in the form of cash or other property, *see* Pl.'s App. (Doc. 2-1 at 144), it appears from the foregoing relief requested in Plaintiff's Motion that it is no longer open to Defendant posting collateral other than cash in the amount demanded.

Plaintiff did not request *ex parte* injunctive relief or expedited consideration of its Motion, and the court did not interpret the Motion as such.  The court, therefore, gave

**Memorandum Opinion and Order – Page 5**

Defendants an opportunity to make an appearance and respond to the Complaint and Motion before ruling.  To date, however, Defendants have not appeared, answered the Complaint, or responded to Plaintiff's Motion.  On December 21, 2023, Plaintiff requested that the clerk of court issue a default against Defendants, and an entry of default was entered on the docket sheet by the clerk of the court later that same day.  Plaintiff did not subsequently file a motion for default judgment; however, it does not appear that service of Plaintiff's Complaint on Defendants was proper; nor does it appear that Defendants were served with a copy of Plaintiff's Motion. Plaintiff's letter request for a hearing on its Motion followed on January 2, 2024.

## II.     Motion for Preliminary Injunction

### A. Injunctive Relief Under Federal Law Is a Drastic and Extraordinary Remedy.

Federal injunctive relief is considered "an extraordinary and drastic remedy" that "should only be granted when the movant has clearly carried the burden of persuasion."  *Anderson v. Jackson*, 556 F.3d 351, 360 (5th Cir. 2009) (internal quotation marks omitted) (quoting *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985)).  Because a preliminary injunction is "an extraordinary and drastic remedy," the Supreme Court has emphasized that "[i]t should never be awarded as of right."  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted).  The movant seeking a preliminary injunction must establish:

> (1) there is a substantial likelihood that the movant will prevail on the merits; (2) there is a substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury [to the movant] outweighs the threatened harm to the defendant; and (4) the granting of the preliminary injunction will not disserve the public interest.

*Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987); *Canal Auth. of the State of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974) (*en banc*).  The party seeking such relief must satisfy a cumulative burden of proving each of the four elements enumerated before a

preliminary injunction can be granted. *Mississippi Power and Light Co. v. United Gas Pipeline*, 760 F.2d 618, 621 (5th Cir. 1985); *Clark*, 812 F.2d at 993. Otherwise stated, if a party fails to meet any of the four requirements, the court cannot grant the preliminary injunction. The decision whether to grant a preliminary injunction lies within the sound discretion of the district court. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 320 (1982).

### B.   Plaintiff Has Not Satisfied All Prerequisites for a Preliminary Injunction.

#### 1.   Substantial Likelihood of Success on the Merits

With respect to the first requirement for injunctive relief, Plaintiff asserts that "there is not just a 'probability' that [it] will succeed on the merits—[Defendants'] breach of the Indemnity Agreement is clear and [its] ability to succeed on the merits is readily apparent." Pl.'s Mot. 18.  Based on a Northern District of California case, Plaintiff contends that it need only "demonstrate a fair chance of success on the merits."  *Id.* at 19 (quoting *Upshaw v. Alameda Cnty.*, 377 F. Supp. 3d 1027, 1031 (N.D. Cal. 2019)). Plaintiff further asserts that, while a movant has the burden of demonstrating a likelihood of success on the merits, it is "not required to prove [its] case in full at this stage but only such portions that enable [it] to obtain the injunctive relief [it] seek[s]." Pl.'s Mot. 18 (citing *Daniels Health Scis., LLC v. Vascular Health Scis., LLC*, 710 F.3d 579, 582 (5th Cir. 2013)). In addition, Plaintiff contends that, "[t]o satisfy the first element of the standard for injunctive relief, it need only show that [it] is 'more likely than not' to prevail."  Pl.'s Mot. 18 (quoting *University of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981); and citing *Federal Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 558 (5th Cir. 1987)).

Plaintiff argues that it easily satisfies this burden because:

Among the Surety's rights under the Indemnity Agreement is the right to request Indemnitors—and thereby obtain Indemnitors' performance—to indemnify and exonerate the Surety from all loss and to provide the Surety with collateral security sufficient to discharge its loss or anticipated loss under the Bonds. Here,

the Surety has requested Indemnitors fulfill their express contractual obligation to do so, but they have refused. The Surety has met its burden of establishing a probability that it is entitled to specific performance of the Indemnity Agreement's collateral security provision.

Pl.'s Mot. 18-19.

Plaintiff further asserts that "the Indemnity Agreement in this instance should be upheld and enforced" because "[t]here is no dispute that the Indemnity Agreement is a valid, existing contract between the Surety and Indemnitors," and "[c]ourts have routinely upheld the validity of collateral security clauses and enforced their terms." *Id.* at 19 (citing *See Liberty Mut. Ins. Co. v. National Pers. of Tex., Inc*., No. 3:02-CV-1341-K, 2004 WL 583531, at *2 (N.D. Tex. Mar. 24, 2004); *Milwaukie Const. Co. v. Glens Falls Ins. Co*., 367 F.2d 964 (9th Cir. 1966); *Travelers Cas. & Sur. Co. of Am. v. Desert Gold Ventures, LLC*, No. 09-4224 PSG AJWX, 2010 WL 5017798, at *7 (C.D. Cal. Nov. 19, 2010); and *United States Fid. & Guar. Co. v. J. United Elec. Contracting Corp*., 62 F. Supp. 2d 915 (E.D.N.Y. 1999)).

Plaintiff is correct that a party is not required to prove its "case in full" to obtain a preliminary injunction. *Dixon*, 835 F.2d at 558 (quoting *Comenisch*, 451 U.S. at 395). This is so because "a preliminary injunction proceeding is not subject to jury trial procedures[.]" *Dixon*, 835 F.2d at 558 ("[A] preliminary injunction is customarily granted on the basis of procedures that are less formal and on evidence that is less complete than a trial on the merits.") (quoting *Comenisch*, 451 U.S. at 395). Another "reason for some leniency in the preliminary injunction stage is that it is used when quick action is necessary to prevent irreparable harm." *Dixon*, 835 F.2d at 558 (citation omitted). It is well established, however, that the decision to grant a preliminary injunction is still "treated as the exception rather than the rule" because of the extraordinary nature of the remedy. *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 363 (5th Cir. 2003) (citation omitted); *House the*

**Memorandum Opinion and Order – Page 8**

*Homeless, Inc. v. Widnall*, 94 F.3d 176, 180 (5th Cir. 1996) (citation omitted); *State of Tex. v. Seatrain Int'l, S.A.*, 518 F.2d 175, 179 (5th Cir. 1975).

This is particularly so when, as here, Plaintiff is not simply seeking to maintain the status quo pending a decision on the merits of its breach of contract claim but instead using the preliminary injunction process to obtain an order requiring Defendants to specifically perform its obligations under the Indemnity Agreement by posting with it $566,712.05 for amounts demanded and allegedly owed by Defendants under the contract. *See Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976) ("Mandatory preliminary relief, which goes well beyond simply maintaining the status quo pendente lite, is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party[.]") (citations omitted); *Digerati Distrib. & Mktg., LLC v. Conradical Sarl*, No. 1:22-CV-01302-DII, 2023 WL 5687040, at *2 (W.D. Tex. Aug. 2, 2023) ("[T]he decision to grant [a preliminary injunction] is to be treated as the exception rather than the rule. . . . This is especially so when the movant seeks mandatory relief compelling action beyond maintaining the status quo—*i.e.*, "specific performance" of a contract.") (citing *Martinez*, 544 F.2d at 1243) (internal citation omitted); *see also TitleMax of Tex., Inc. v. City of Dallas*, No. 3:21-CV-1040-S-BN, 2021 WL 4994448, at *7 (N.D. Tex. Aug. 11, 2021), *report and recommendation accepted*, No. 3:21-CV-1040-S-BN, 2021 WL 4991989 (N.D. Tex. Oct. 27, 2021) (explaining the difference between mandatory and prohibitory injunctions and treatment of mandatory injunctions in the Fifth Circuit).

This aside, Plaintiff has not established that it is substantially likely to succeed on the merits of its breach of contract claim and request for specific performance of the parties' Indemnity Agreement. To satisfy this requirement, a party need not prove that it is entitled to summary judgment, but it must present a prima facie case. *Janvey v. Alguire*, 647 F.3d 585, 595-

96 (5th Cir. 2011) (citations omitted).  To assess a party's likelihood of success on the merits and whether it has established a "prima facie case," courts in this Circuit "look to 'standards provided by the substantive law.'" *Id.* (citation omitted) (assessing whether the plaintiff carried his burden of proving a likelihood of success on the merits of his Texas Uniform Fraudulent Transfer Act under Texas law); *Daniels Health Scis., L.L.C.*, 710 F.3d at 582 (evaluating whether the plaintiff established a prima facie case on its contract and other state law claims under Texas law).

Here, the Indemnity Agreement includes a "Choice of Law" provision that provides as follows:

> Indemnitors Agree that this Indemnity Agreement shall be deemed to have been made in the state of incorporation of the Surety. Interpretation and enforcement of this Agreement, *at the option of the Surety*, shall be governed by the laws of the said state of incorporation. For the purposes of this paragraph, the principal office for the Surety shall be deemed to be located in Louisiana.

Pl.'s App. (Doc. 2-1 at PageID 148) (emphasis added). Plaintiff's Motion, however, contains no discussion regarding which state's law governs interpretation and enforcement of the parties' Agreement or its breach of contract claim and request for specific performance.  Also absent from Plaintiff's Motion is any discussion of the elements or requirements under state law applicable to its breach of contract claim and request for specific performance, and Plaintiff's sweeping statements regarding its likelihood of success are insufficient to show that all requirements for the relief sought have been satisfied. Moreover, the cases that Plaintiff relies on applied the substantive laws of different states. Thus, the first requirement for injunctive relief is not adequately briefed, and Plaintiff's failure to identify specific evidence that supports each of the elements for its contract claim and request for specific performance under applicable state law precludes a finding that it has satisfied its burden of establishing a substantial likelihood of succeeding on the merits.

### 2.   Substantial Threat of Irreparable Harm if Injunction Not Granted

"[T]he central purpose of a preliminary injunction . . . is to prevent irreparable harm. It is the threat of harm that cannot be undone which authorizes exercise of this equitable power to enjoin before the merits are fully determined." *Parks v. Dunlop*, 517 F.2d 785, 787 (5th Cir. 1975); *Canal Auth. of the State of Florida*, 489 F.2d at 576 ("The purpose of a preliminary injunction is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits."). Consequently, "only those injuries that cannot be redressed by the application of a judicial remedy after a hearing on the merits can properly justify" the "extraordinary and drastic remedy" of a preliminary injunction." *Id.* at 573, 576.

Thus, to satisfy this prong of the preliminary injunction test, Plaintiff must show that it is "likely to suffer irreparable harm" in the absence of preliminary injunctive relief before a decision on the merits can be rendered, that is, "harm for which there is no adequate remedy at law," such as money damages. *Daniels Health Scis., LLC.*, 710 F.3d at 585 (quoting *Winter*, 555 U.S. at 20; and citing *Janvey*, 647 F.3d at 600).   The movant seeking injunctive relief "must show a real and immediate threat of future or continuing injury apart from any past injury." *Aransas Project v. Shaw*, 775 F.3d 641, 663-64 (5th Cir. 2014) (per curiam) (citing *In re Stewart*, 647 F.3d 553, 557 (5th Cir. 2011)). A "[s]peculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant." *Daniels Health Scis., LLC*, 710 F.3d at 585; *see also Winter*, 555 U.S. at 22 (rejecting the Ninth Circuit's "possibility" standard as "too lenient" and explaining that a "preliminary injunction will not be issued simply to prevent the possibility of some remote future injury" because doing so would be "inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.") (citations omitted).

**Memorandum Opinion and Order – Page 11**

An "injury is 'irreparable' only if it cannot be undone through monetary remedies." *Enterprise Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 474 (5th Cir. 1985). "Mere injuries, however substantial in terms of money, time and energy necessarily expended in the absence of a stay, are not enough." *Morgan v. Fletcher*, 518 F.2d 236, 240 (5th Cir. 1975). Thus, the movant also must demonstrate that such injury "cannot be undone through monetary remedies." *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012) (quoting *Interox Am. v. PPG Indus., Inc*., 736 F.2d 194, 202 (5th Cir. 1984)). "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weigh[ ]s heavily against a claim of irreparable harm." *Enterprise Int'l, Inc.*, 762 F.2d at 474 (quoting *Morgan*, 518 F.2d at 240). "The absence of an available remedy by which the movant can later recover monetary damages, however, may also be sufficient to show irreparable injury." *Enterprise Int'l, Inc.*, 762 F.2d at 474 (footnote and citations omitted).

Even assuming that Plaintiff can cure the deficiencies already noted with respect to the first preliminary injunction factor, its Motion fails under this second irreparable harm factor. Regarding this factor, Plaintiff asserts that "[c]ourts generally grant specific performance to enforce collateral security clauses on the grounds that if a creditor is to have the security position he bargained for, the promise to maintain that security must be specifically enforced." Pl.'s Mot. 7-8 (quoting *Hartford Fire Ins. Co. v. 3i Constr., LLC*, No. 3:16-CV-00992-M, 2017 WL 3209522, at *2-9 (N.D. Tex. May 18, 2017), and (citing *Wingsco Energy One v. Vanguard Group Res.*, No. H-86-452, 1989 WL 223756 (S.D. Tex. 1989)). Plaintiff contends that, because of the nature of this action being a surety action involving an indemnity agreement, and the

inclusion of irreparable harm language in the parties' Indemnity Agreement, it should be relieved

from establishing the requirements for injunctive relief, including irreparable harm:

> 3.      Due to the contractual promises made by the Indemnitors, with undisputed
> knowledge of the Surety's ability to enforce such promises, this Court should
> award injunctive relief by virtue of the Indemnity Agreement . . . without
> requiring the Surety to show all factors traditionally associated with injunctive
> relief. *See, e.g., Hartford Fire Ins. Co. v. 4-H Ventures, Inc*., 2008 U.S. Dist.
> LEXIS 48602 at *11 (S.D. Tex. June 25, 2008) (Upholding parties' agreement
> that failure to provide collateral constituted irreparable harm). Accordingly, the
> Surety requests that this Court order the Indemnitors to uphold their promises to
> exonerate and indemnify the Surety, to deposit sufficient collateral with the
> Surety, and to provide the Surety with unrestricted access to the Indemnitors'
> books and records.

Pl.'s Mot. 2.[2] Alternatively, it contends that it has satisfied all requirements for injunctive relief,

and it is, therefore, entitled to specific performance of the Indemnity Agreement.  For the reasons

already explained and those that follow, the court disagrees that Plaintiff has met its burden of

with respect to each of the four requirements for a preliminary injunction.

### a.      Contractual Stipulation of Irreparable Harm

The contractual provision with the irreparable harm language referenced in Plaintiff's

Motion and pleadings provides as follows:

> The Indemnitors acknowledge and agree that the Indemnitors' failure to
> deposit with Surety, immediately upon demand, the sum demanded by Surety as
> collateral security shall cause irreparable harm to Surety for which Surety has no
> adequate remedy at law. Therefore, the Indemnitors agree that Surety shall be
> entitled to injunctive relief for specific performance of said obligation of the
> Indemnitors and hereby waive any claims or defenses to the contrary.

Pl.'s App. (Doc. 2-1 at PageID 140).

---

[2] Plaintiff further asserts that this is not the first time Defendants have failed to perform as required under "an indemnity agreement," and that similar indemnity issues were at stake in *Hartford Fire Ins. Co. v. 3i Constr., LLC.* Pl.'s Mot. 1. Whether Defendants failed to perform under a separate indemnity agreement with a different party is not relevant to whether Plaintiff is likely to suffer irreparable harm in the future if it is denied the injunctive relief sought in this case.

It is clear from this provision in the parties' Indemnity Agreement that Defendants unambiguously stipulated that Plaintiff would suffer irreparable harm and would be entitled to injunctive relief in the form of specific performance if they failed to immediately deposit with the Surety the amount demanded as collateral security. The question is whether such a stipulation is legally sufficient, without more, to support injunctive relief under federal law, or a finding of irreparable harm. The Fifth Circuit has yet to address this issue, and district courts in this Circuit are split on whether a contractual stipulation alone satisfies the irreparable harm requirement for federal injunctive relief. *Compare Dickey's Barbecue Restaurants, Inc. v. GEM Inv. Grp., L.L.C.*, 2012 WL 1344352, at *4 (N.D. Tex. Apr. 18, 2018), with *4-H Ventures, Inc.*, 2008 WL 11389579, at *4. Most courts agree, however, that contractual stipulations such as this, without more, are insufficient to support a grant of injunctive relief, and those that do not agree are not binding on this court or persuasive.

In *4-H Ventures*, the district court concluded, *without any citation to legal authority*, that the irreparable harm requirement for federal injunctive relief was satisfied because the plain language of the parties' indemnity agreements indicated that the defendants expressly agreed that the failure to provide the requested collateral would constitute irreparable harm. *Id.* at *4. In discussing the harm required for federal injunctive relief, the district court in *4-H Ventures* also cited a Dallas Court of Appeals case involving "temporary injunctive relief" under Texas law, even though the standards for state and federal injunctive relief are not the same, and the federal standard is much more stringent.

On the other hand, when presented with the same issue in *Dickey's Barbecue*, the undersigned previously concluded that a contractual stipulation "is merely one factor to be examined in making the irreparable harm determination" and insufficient alone to establish the

type of irreparable harm required for a preliminary injunction under federal law. *Dickey's Barbecue Restaurants, Inc.*, 2012 WL 1344352 at \*4 (citations omitted). Based on the reasoning in *Dickey's Barbecue*, other district court cases in this Circuit, including those in the Southern District of Texas and the Northern District of Texas relied on by Plaintiff, have similarly concluded that the existence of a contractual provision for injunctive relief alone is insufficient to support a finding of irreparable harm or an award of injunctive relief under federal law.  *See, e.g., Texas Health & Human Servs. Comm'n v. United States*, 166 F. Supp. 3d 706, 711-12, (N.D. Tex. 2016); *Lockheed Martin Corp. v. Howmet Aerospace Inc*., No. 4:23-CV-01204-O, 2023 WL 9503470, at \*3-4 (N.D. Tex. Dec. 29, 2023); *Yellowstone Landscape v. Fuentes*, No. 4:20-CV-1778, 2020 WL 4547150, at \*7 (S.D. Tex. Aug. 6, 2020); *ZeniMax Media Inc. v. Oculus VR LLC*, No. 3:14-CV-1849-K, 2018 WL 4078586, at \*1 (N.D. Tex. June 27, 2018); *3i Constr., LLC*, 2017 WL 3209522, at \*2 (cited by Plaintiff); *Raider Mktg., LP v. Chesapeake Energy Mktg., LLC*, No. 3:17-CV-01516-N, 2017 WL 11678915, at \*1-2 (N.D. Tex. June 9, 2017); *Traders Int'l, Ltd. v. Scheuermann*, 2006 WL 2521336, \*8 (S.D. Tex. Aug. 30, 2006)).

Although the Fifth Circuit has yet to weigh in on this issue, other circuits that have addressed the issue also agree that contractual provisions like the one in this case are insufficient to support injunctive relief notwithstanding any agreement by the parties to the contrary. *See, e.g., Dominion Video Satellite, Inc. v. Echostar Satellite Corp*., 356 F.3d 1256, 1266 (10th Cir. 2004) ("While courts have given weight to parties' contractual statements regarding the nature of harm and attendant remedies that will arise as a result of a breach of a contract, they nonetheless characteristically hold that such statements alone are insufficient to support a finding of irreparable harm and an award of injunctive relief.") (citations omitted); *Smith, Bucklin & Assocs., Inc v. Sonntag*, 83 F.3d 476, 481 (D.C. Cir. 1996) ("Although there is a contractual

provision that states that the company has suffered irreparable harm if the employee breaches the covenant and that the employee agrees to be preliminarily enjoined, this by itself is an insufficient prop.") (citation omitted); *Baker's Aid v. Hussmann Foodservice Co*., 830 F.2d 13, 16 (2d Cir. 1987) ("We also agree with the district court that the contractual language declaring money damages inadequate in the event of a breach does not control the question whether preliminary injunctive relief is appropriate.") (citations omitted).

Accordingly, for the reasons previously explained by the undersigned in *Dickey's Barbecue*, the court disagrees that the inclusion of the contractual provision in the Indemnity Agreement in this case relieves Plaintiff of its burden to establish each requirement for a preliminary injunction, or the irreparable harm requirement. Moreover, in the absence of Fifth Circuit or Supreme Court authority to the contrary, *4-H Ventures* is neither binding on the undersigned nor persuasive. The contractual provision in the Indemnity Agreement is, therefore, merely one factor in determining whether Plaintiff has satisfied the irreparable harm requirement for injunctive relief.

> **b.    Nature of Surety Action: Bargained-For Prejudgment Collateralization on Demand**

Plaintiff's argument that—the mere nature of this action being a surety action involving an indemnity agreement is sufficient to satisfy the irreparable harm requirement for injunctive relief—is similarly unpersuasive. In this regard, Plaintiff contends that, when it issued the bonds in this case, "it relied upon the ability of [Defendants as] Indemnitors to perform under the Indemnity Agreement and to protect [it] from all loss and expense [it] may sustain as result of issuing the [b]onds," and it "would not have issued the [b]onds without the financial guarantees contained within the Indemnity Agreement." Pl.'s Mot. 11. Plaintiff asserts that the rationale behind finding irreparable harm warranting injunctive relief in surety cases such as this in the

form of specific performance of a collateral security provision is that "the surety has specifically bargained for prejudgment collateralization[,] and a [post]judgment [award] for money damages alone would deprive the surety of prejudgment relief to which it is contractually entitled." Pl.'s Mot. 12 (citations omitted).

Thus, according to Plaintiff, sureties like it have no adequate remedy at law when a defendant breaches by refusing to post collateral upon demand in accordance with an indemnity agreement. Plaintiff further asserts that such harm would be irreparable because, if its right to collateralization cannot be enforced via the equitable remedy of specific performance at the inception of a lawsuit, and it is required instead to await a determination by final judgment, then its contractual bargained-for right to prejudgment collateralization will be forever lost and rendered meaningless. In addition, Plaintiff contends that "[o]ften times the concepts of 'irreparable injury' and 'no adequate remedy at law' are indistinguishable in the context of a permanent injunction." Pl.'s Mot. 14 (quoting *Lewis v. S. S. Baune*, 534 F.2d 1115, 1124 (5th Cir. 1976)). Plaintiff, therefore, asserts that this court's "adequate remedy at law analysis" should "parallel[] that performed for irreparable harm." Pl.'s Mot. 14 (citing *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1219 (C.D. Cal. 2007)).

Plaintiff's reliance on *Lewis v. S. S. Baune* is misplaced, as the Fifth Circuit in that case determined that the district court erred in granting preliminary and permanent injunctive relief because the perceived injury to the movants was not irreparable, and the remedy available to them was not inadequate. *Lewis*, 534 F.2d at 1122-23. For the same reason, the court *in Lewis* concluded that the district court erred in holding the defendants in contempt of violating a temporary restraining order ("TRO").

**Memorandum Opinion and Order – Page 17**

In *Lewis*, the plaintiffs were two attorneys who represented the families of several Jamaican seamen killed in a ship collision involving the Norwegian ship, S.S. Baune. *Id.* at 1118. Concerned that a settlement would be negotiated without their consent and in contravention of contingency fee agreements entered into with the Jamaican claimants, the attorneys initially sought and obtained a temporary restraining order ("TRO") and, one year later, were awarded preliminary and permanent injunctions against vessel owners and insurers to enjoin them from contacting their clients or negotiating a settlement of the Jamaican claimants' claims without the consent of counsel. *Id.* The appeal in *Lewis* was to the permanent injunction and the contempt finding. *Id.* Because the TRO was in effect for approximately one year before the preliminary or permanent injunctions issued, the Fifth Circuit concluded that it "was in substance and effect a preliminary injunction" and viewed as such for purposes of the appeal. *Id.* at 1121 (citations omitted).

The Fifth Circuit in *Lewis* determined that the attorneys had not demonstrated irreparable harm or the lack of an adequate remedy as required to support the injunctive relief granted because "[t]he conduct sought to be enjoined was not the type of conduct that would cause any great injury, certainly not irreparable injury," and "the close scrutiny given to a settlement by a seaman and the plenary power of a court to set aside a settlement that it deems unjust, provide the appellees with a clear and adequate remedy at law." *Lewis*, 534 F.2d at 1124. In so holding, the court in *Lewis* emphasized the extraordinary nature of injunctive relief and the requisite showing of irreparable harm: "The finding prior to issuance, most essential to a preliminary injunction, is that the failure to grant it will result in irreparable injury to the person requesting the relief[.] . . . An injunction is an extraordinary remedy and should not issue except upon a clear showing of possible irreparable injury[.] *Id*. at 1121 (citations omitted).

**Memorandum Opinion and Order – Page 18**

While Plaintiff is correct that *Lewis* stated that "the concepts of "irreparable injury" and "no adequate remedy at law" are frequently "indistinguishable," the court also distinguished between what was required to obtain a preliminary injunction and permanent injunction:

> Whereas the essential finding that must be made to issue a TRO or preliminary injunction is irreparable injury, the essential prerequisite to a permanent injunction is the unavailability of an adequate remedy at law. Irreparable injury is, however, one basis, and probably the major one, for showing the inadequacy of any legal remedy[.]

*Id.* at 1123-24 (citation omitted). From this, the court concludes that, although a showing of irreparable harm may be sufficient to establish the inadequacy of a legal remedy, the converse— that the lack of an adequate remedy is sufficient to establish a substantial threat of irreparable harm— is not necessarily true.  In other words, *Lewis* does not support Plaintiff's argument that the lack of a legal remedy by a surety to obtain an indemnitor's performance under a contract is per se evidence that the surety in every case will be irreparably injured if it must await a postjudgment award of monetary damages.  According to *Lewis*, this is so because "the irreparable injury rubric is intended to describe the quality or severity of the harm necessary to trigger equitable intervention. In contrast, the inadequate remedy test looks to the possibilities of alternative modes of relief, however serious the initial injury[.]"  *Id.* at 1124 (citation omitted).

Absent guidance from the Fifth Circuit to support Plaintiff's argument—that an indemnitor's breach of and failure to comply with a contractual collateralization obligation to pay money demanded and the resulting damage to the surety *always* constitutes the type of irreparable harm required for a preliminary injunction that cannot be adequately remedied by monetary damages—it does not convince the court otherwise. Moreover, the authority cited by Plaintiff is not binding precedent.  For purposes of brevity, the court limits its remaining discussion to the district court cases within this circuit on which Plaintiff relies. *See* Pl.'s Mot.

13-15 (discussing *Travelers Cas. & Surety Co. of Am. v. Padron*, No. 5:15-CV-200-DAE, 2017 WL 9360906, at *1 (W.D. Tex. Aug. 2, 2017) ("*Padron III*"); and *3i Constr., LLC*, 2017 WL 3209522, at *4 (quoting *Travelers Casualty & Surety Company v. Ockerlund*, No. 04-C-3963, 2004 WL 1794915, *1 (N.D. Ill. Aug. 6, 2004)).

As a preliminary matter, the court notes that *Padron* and *3i Construction* both declined to enforce the irreparable harm contractual stipulation without evidence that there was a substantial threat the sureties would suffer irreparable harm in the absence of injunctive relief. Unlike this case, the courts in *Padron* and *Hartford Fire Insurance Company v. 3i Construction* also based their irreparable harm finding in part on evidence that the defendant indemnitors were likely dissipating assets, insolvent, or both. This fact distinguishes the two cases from the present one because there is no evidence here that Defendants have or likely will dissipate or transfer assets needed to pay a later judgment. Likewise, this is no evidence that Defendants are insolvent, or that Plaintiff likely will be required to file for bankruptcy or will likely suffer similar irreparable loss that threatens the very existence of its business if it is required to await a determination on the merits of its claim for specific performance by final judgment. *See Texas v. United States Envtl. Prot. Agency*, 829 F.3d 405, 434 (5th Cir. 2016) (quoting *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) ("Recoverable monetary loss may constitute irreparable harm only where the loss threatens the very existence of the movant's business.")).

Plaintiff cites legal authority for the conclusion that "[a]n injury is irreparable if it cannot be prevented or fully rectified by an award of damages at the end of trial, such as when '[d]amages may be unobtainable from the defendant because he may become insolvent before a final judgment can be entered and collected.'" Pl.'s Mot. 12 (citations omitted). It also contends that "[i]f [it] is denied an injunction, it is likely [that] no assets will be available to [it] later to

satisfy Indemnitors' contractual and common law obligations." *Id.* at 17. Again, however, Plaintiff fails to point to any evidence supporting this conclusion, and conclusory and unsubstantiated assertions such as this, although included in a verified Motion, are not evidence and, therefore, insufficient to support its burden of clearly establishing the requirements for a preliminary injunction. *See Higgins v. Lumpkin*, No. 21-20058, 2022 WL 1517039, at *1 (5th Cir. May 13, 2022) ("[U]nsupported and conclusory allegations show neither a likelihood of success on the merits, nor an irreparable injury warranting a preliminary injunction."); *Hunt v. Bankers Tr. Co.*, 646 F. Supp. 59, 66 (N.D. Tex. 1986) ("Movants have presented affidavits, which the Court deems conclusory, alleging that denial of a TRO will harm the public interest through reduced oil and gas production . . . and loss of jobs. . . . Such broad, sweeping statements have no relevance as a separate factor in determining whether an interlocutory order is appropriate. Generalities will not support a determination that the public interest would be served by granting the TRO.") (citations and internal quotation marks omitted). Additionally, perceived harm "must be more than speculative; there must be more than an unfounded fear on the part of the applicant." *Louisiana v. Biden*, 55 F.4th 1017, 1034 (5th Cir. 2022) (internal quotations omitted); *Holland Am. Ins. Co.*, 777 F.2d at 997 ("[s]peculative injury is not sufficient [to show irreparable harm]; there must be more than an unfounded fear on the part of the applicant") (citation omitted). Given Plaintiff's request for the court to compel access to Defendants' books and records leads to the inference that it does not currently have evidence of Defendants' financial condition or information regarding their assets and is requesting access for this reason.

Moreover, it was only after the *third* attempt and motion for injunctive relief by the surety in *Padron* that the court granted the requested preliminary injunction and determined that the surety had satisfied its burden of establishing a substantial threat of irreparable harm. *Padron*

*III*, 2017 WL 9360906, at *1.  Each time in ruling on the surety's motions for injunctive relief, the *Padron* court rejected as "improper" an argument similar to the one Plaintiff makes here on the grounds that it conflates "specific performance's inadequate remedy at law requirement and the preliminary injunction's irreparable injury requirement is improper." *Id.* at *10.  In reaching this conclusion, the *Padron* court found the following reasoning in *Fireman's Insurance Company of Newark, N.J. v. Keating* persuasive:

> No case cited by plaintiff, nor any uncovered by independent research, makes the automatic connection urged by plaintiff between the ordinary remedy of specific performance [under state law] and the extraordinary remedy of a preliminary injunction [under federal law]. Indeed, to do so would be to create a *per se* rule that would eliminate the crucial "irreparable harm" branch of the test for preliminary injunctions, in such cases where specifically enforceable contractual provisions are at issue. . . .

> Correctly viewed, then, a showing of an inadequate remedy at law is a *sine qua non* of granting injunctive relief, but it is not synonymous with a showing of irreparable harm, and does not, without such a showing, support the granting of a preliminary injunction.

*Travelers Cas. & Sur. Co. of Am. v. Padron*, No. 5:15-CV-200-DAE, 2015 WL 1981563, at *10 (W.D. Tex. May 1, 2015) ("*Padron I*") (quoting *Fireman's Ins. Co. of Newark, N.J. v. Keating*, 753 F. Supp. 1146, 1152 (S.D.N.Y. 1990)).

It was only after the surety in *Padron* came forward in its third motion for a preliminary injunction with "significant evidence" regarding the indemnitors' financial condition, insolvency, and conduct in depleting assets, including the selling of properties, that the court determined that the surety had finally satisfied the irreparable harm requirement for injunctive relief.  *Padron III*, 2017 WL 9360906, at *11.  Absent this evidence, the court in *Padron* reasoned that the surety could "recover the collateral through final relief of specific performance," for example, through summary judgment, rather than specific performance via a preliminary injunction.  *Padron I*, 2015 WL 1981563, at *7, 10 (quoting *Dennis Melancon, Inc.*

*v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012) ("The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."); *Padron III*, 2017 WL 9360906, at *11 (same).

In granting the surety's third motion for injunctive relief, the court in *Padron* also distinguished between losses already incurred for paying bond claims and those not yet paid, and noted:

> Federal courts have addressed this distinction by generally finding—notably, at the first step of preliminary injunction analysis—**that breach of contract damages are an adequate remedy to enforce collateral security clauses as to any loss already incurred by the surety**, while specific performance is the only remedy to enforce the same clauses as to any anticipated or as-yet-avoided loss by the surety.

*Id*. at *9 (citations omitted and emphasis added). Likewise, the Fifth Circuit has previously held that, "[a]lthough past wrongs may help establish the threat of a future injury, they are alone insufficient" to establish the type of irreparable harm required for a preliminary injunction. *Aransas Project v. Shaw*, 775 F.3d 641, 663 (5th Cir. 2014) (citing *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)). Thus, for example, in the context of unfair competition resulting in the loss of customers, a plaintiff must show a "real and immediate threat of future or continuing injury apart from any past injury." *Porter Teleo, LLC v. Print4One, LLC*, No. 4:19-CV-03334, 2020 WL 6277583, at *3 (S.D. Tex. Sept. 9, 2020).

This reasoning undermines Plaintiff's request for specific performance in the form of a preliminary injunction because its Motion blurs the distinction between amounts paid by it on bond claims and amounts it anticipates having to pay in the future for bond claims. As a result, although Plaintiff specifies the total amount of collateral sought ($566,712.05) for bond claims covered by the Indemnity Agreement, it is not clear from Plaintiff's Motion, pleadings, or

evidence what portion of this amount represents previously incurred claims that would not support a finding of irreparable harm as needed for an award of injunctive relief under *Shaw*, and would not entitle Plaintiff to specific performance according to *Padron*.

Plaintiff's Motion also makes a passing reference to *Wingsco Energy One v. Vanguard Group Res.*, No. H-86-452, 1989 WL 223756 (S.D. Tex. 1989). Unlike *Padron* and *Hartford Fire Insurance Company v. 3i Constr., LLC*, *Wingsco* did not include a contractual stipulation regarding injunctive relief or irreparable harm, but it does appear to support Plaintiff's assertion that the nature of surety actions and the rights at issue in such actions satisfy the irreparable harm requirement for injunctive relief without more. Other than the legal standard for a preliminary injunction, however, *Wingsco* contains *no* citations to state or federal legal authority. It is devoid of any discussion of state law and simply cites to a treatise—"Babcock, An Update—Suits for Exoneration and Other Special Relief, 17 Forum 344, 345 (1981)"—in concluding that the requirements for specific performance of a contract were satisfied. *Id.* at *1-2. Thus, it is unclear what state law governed the indemnity agreement in *Wingsco* or how the court determined that the surety established a substantial likelihood of succeeding on the merits of its request for specific performance.

*Wingsco's* irreparable harm analysis is similarly conclusory. *Wingsco* recognized that, in conducting a preliminary injunction analysis, courts balance the four requirements for such relief and "[u]sually this balancing focuses on the irreparable harm" requirement. *Id.* at *4. It then went on to conclude that "[a] denial of [the surety's] requested relief will forever deny to [the surety] its ability to assert and enforce its *quia timet* and exoneration rights under the Indemnity Agreements, at common law, and in equity. Those rights are moot once payment by or on behalf of the surety is made." *Id.* Despite recognizing the import of the irreparable harm requirement,

*Wingsco* never expressly concluded that there was a substantial threat that irreparable harm would result if the requested injunction was not granted. Moreover, without any citation to legal authority, the foregoing reasoning in *Wingsco* essentially collapses or equates a surety's entitlement to specific performance with the irreparable harm required for injunctive relief despite the court's acknowledgment in that case that a surety's request for specific performance does not require a showing of irreparable harm.  *Id.* at *2.

Given the lack of legal authority in *Wingsco*, the court does not find this case persuasive, and, in any event, it is not binding on the undersigned. Additionally, while the court in *Wingsco* ordered specific performance in connection with granting the surety's request for a preliminary injunction, it required the money to be deposited into the registry of the court, not with the surety, which distinguishes it from this case and Plaintiff's request for the court to order Defendants to pay demanded amounts directly to Plaintiff.  *See id.* at *4.

Finally, the Indemnity Agreement's assignment to Plaintiff from Defendants of the following rights and property to secure any indebtedness and liabilities of Defendants to Plaintiff undercuts Plaintiff's argument that its only adequate remedy is specific performance of the monetary amount demanded by it:

     a.   All the rights of the Indemnitors in, and growing in any manner out of, the Bonds or any Contracts referred to in the Bonds;

     b.   All the rights, title and interest of the Indemnitors in and to all machinery, equipment, vehicles, plant, tools and materials that are now, or may hereafter be, about or upon the site or sites of any and all of the contractual work referred to in the Bonds or elsewhere, including materials purchased for or chargeable to any and all Contract referred to in the Bonds or elsewhere, materials which may be in process of construction, in storage elsewhere, or in transportation to any and all of said sites;

     c.   All the rights, title and interest of the Indemnitors in and to all surety bonds supporting such Contracts;

      d.   All actions, causes of actions, claims and/or the proceeds therefrom and any demands whatsoever that the Indemnitors may have or acquire against any party, including, but not limited to, owners, obligees, subcontractors, laborers or materialmen, architects, engineers, or any person furnishing or agreeing to furnish or supply labor, material, supplies, machinery, tools or other equipment in connection with or including, but not limited to, prime contractors, subcontractors. laborers, or materialmen;

      e.   Any and all percentages retained and any and all sums that may be due or hereafter become due on account of any and all Contracts in which the Indemnitors have an interest;

      f.   Any and all accounts receivable, marketable securities, rents, proceeds of sale, instruments, chattel paper, letters of credit, documents of title, bills of lading, federal tax refunds, state and local tax refunds, and general intangibles;

      g.   Any and all rights, titles, and interest of the Indemnitors in and to all real property.

      h.   Any and all policies of insurance.

Pl.'s App. (Doc. 2-1 at PageID143).  From this, it is clear that the parties' Agreement provides Plaintiff with other resources and means of protecting itself from liability aside from cash.

It is true that the parties' Indemnity Agreement gives Plaintiff the contractual right and *option* of demanding that Defendants deposit collateral with it in the form of "cash or other property" and further provides that the "Surety shall have the right to use the collateral, or any part thereof, in payment or settlement of any claim, Loss, expense or liability asserted for which the Indemnitors are or would be obligated to indemnify Surety under the terms of this Agreement." *Id.*  Plaintiff's decision to exercise its right to demand that Defendants deposit collateral in the form of cash, however, does not necessarily mean that Plaintiff, as the Surety, lacks an adequate remedy or will likely suffer irreparable harm if the request for a preliminary injunction enforcing its right under the Agreement to demand collateral in the form of cash is

denied.  Absent an explanation of why the other rights, interests, and property assigned and available to Plaintiff under the Indemnity Agreement are not adequate to protect it from suffering irreparable harm, the rationale relied on by it for finding irreparable harm and awarding prejudgment injunctive relief *in every surety action* is insufficient to clearly carry its burden of persuasion as to this requirement for injunctive relief.  *See Anderson*, 556 F.3d at 360.

For all of these reasons, the court determines that this factor does not weigh in favor of granting the preliminary injunction and specific relief requested in Plaintiff's Motion.

### 3.   Threatened Injury to Movant Outweighs Harm to Defendants

Regarding this factor, Plaintiff contends that "[i]t is evident that the balance of harms in this matter weighs in favor of the Surety" because "[i]f the Surety is denied an injunction, it is likely no assets will be available to the Surety later to satisfy Indemnitors' contractual and common law obligations."  Pl.'s Mot. 17.  As previously noted, this assertion is conclusory and not supported by any facts or evidence.

Plaintiff further asserts:

> Granting injunctive relief will cause no substantial harm to Indemnitors. It merely requires Indemnitors to abide by their promises. If this Court grants the injunction and orders Indemnitors to specifically perform their obligations under the Indemnity Agreement's collateral security provision, the parties will simply be placed in the positions they bargained for at the time the Indemnity Agreement was executed. Indemnitors will be required to perform as they contractually agreed to do, and the Surety will receive the collateral security to which it is entitled.

*Id.* at 18 (citations omitted).

In light of its analysis above, the court cannot say that the threatened harm to Plaintiff outweighs the harm to Defendants if Plaintiff's request for a preliminary injunction is denied, particularly since it appears that Plaintiff presently has other resources and remedies available to

it under the parties' Agreement to secure the obligations in that Agreement and any other indebtedness and liabilities of the Indemnitors to the Surety. *See* Pl.'s App. (Doc. 2-1 at 143).

### 4. Public Interest

Plaintiff argues that the public interest factor "clearly weighs in favor of the Surety" because "[t]he general indemnity agreement is the foundation of modern suretyship, . . . its enforcement is essential to the procurement of contract surety bonds to guarantee performance on construction projects," and "[p]ublic and private construction projects cannot be bonded on the terms typical in the industry if the Surety has no assurance that the protection of its indemnity agreement is not available." Pl.'s Mot. 20.

The court agrees with the general propositions that the public has an interest in seeing contracts enforced, and indemnity agreements serve an important purpose. Given the court's determinations regarding the other factors for injunctive relief, however, the public interest cannot accurately be weighed at this time. In the context of public interest, the court views as distinct the enforcement of an indemnity agreement in the absence of an adequate legal remedy, on one hand, and the enforcement of a surety's *election* of remedies under an indemnity agreement, on the other hand. Accordingly, the court determines that the public interest does not militate in favor of a preliminary injunction based on the facts or lack of information available in this case.

Thus, for all of the aforementioned reasons, the court **denies without prejudice** Plaintiff's Motion (Doc. 2).

III.    **Letter Request for Hearing**

The letter request for a hearing does not satisfy this district's Local Civil Rules or the Federal Rules of Civil Procedure.  Specifically, it is not signed by Plaintiff's attorney as required by Federal Rule of Civil Procedure 11(a), and it is not in the form of a motion, which is required pursuant to Federal Rule of Civil Procedure 7(b). Even if the request for a hearing were included in a motion signed by Plaintiff's attorney, the request would be moot given the court's denial of Plaintiff's Motion and request for injunctive relief.  Moreover, the court generally does not conduct a hearing on a request for injunctive relief unless there is a factual dispute on a material issue or the Federal Rules of Civil Procedure require a hearing to be held.  There is no factual dispute here because Defendants have not appeared or responded to Plaintiff's Motion, and no hearing is required under Rule 65 because Plaintiff has not so requested, and the court has not previously granted Plaintiff a temporary restraining order.  The letter request for a hearing (Doc. 14) is, therefore, **denied**.

IV.    **Other Issues**

**A.  Noncompliance with Local Civil Rules**

Plaintiff's Motion fails to comply with this district's Local Civil Rules ("Local Rules") for a number of reasons. The Motion does not contain a certificate of conference. *See* L.R. 7.1(b). While the clerk of the court issued an entry of default against Defendants on December 21, 2023, this did not excuse Plaintiff's failure approximately 6 weeks earlier from including a certificate of conference in its Motion or addressing in the Motion its reasons for not conferring with Defendants before filing its Motion.  In addition, Plaintiff's Motion exceeds ten pages in length, but it does not include a table of contents or table of authorities as required by Local Rule 7.2.  Local Rule 7.1(d) also requires opposed motions to be accompanied by a brief. Plaintiff's

Motion was not accompanied by a brief, but it contains Plaintiff's contentions of fact and/or law, and argument, so the court assumes that the Motion was meant to satisfy this rule's requirement that a brief be filed in support of an opposed motion.

Further, the evidence filed by Plaintiff in support of its Motion does not comply with Local Rules applicable to motion practice and briefing. As previously noted, Plaintiff's 102-page appendix is not numbered sequentially, and its Motion does not cite to specific appendix pages as required by the Local Rules. *See* L.R. 7.1(i)(4), 7.2(e).  Compliance with Local Rules facilitates the expeditious resolution of pending motions, and a party's failure to follow these rules interferes with and hinders the court's ability to effectively manage its docket. It is not incumbent on the court to use its already scarce judicial resources to wade through noncompliant materials hastily filed by a party. Moreover, "[b]y appearing in any case, an attorney becomes subject to the rules of this court." L.R. 83.9.  Plaintiff's failure to comply with the Local Rules constitutes an additional reason for denying its Motion and request for injunctive relief.

### B.  Deficiencies in Service of Summons and Complaint on Defendants

As noted, the court has concerns whether Plaintiff has served Defendants in accordance with Federal Rule of Civil Procedure 4. Rule 4(e) requires that service upon individuals such as Micheal Williams be made in one of two ways: (1) pursuant to the law of the state in which the district court is located; or (2) by delivering a copy of the summons and complaint to the individual personally or by leaving copies thereof at the individual's home with a person of suitable age and discretion or with an authorized agent. *See* Fed. R. Civ. P. 4(e)(1), (2).  Service on 3i Contracting, LLC is properly effected if the plaintiff follows Rule 4(e)(1), which provides for service under the laws of Texas, or "by delivering a copy of the summons and of the complaint to the officer, a managing or general agent, or any other agent authorized . . . to

receive service of process." Fed. R. Civ. P. 4(h)(1) (governing service on corporations, partnerships, and associations). Texas law authorizes service by: (1) delivering a copy of the citation and petition to a defendant in person; or (2) mailing a copy of the citation and petition to the defendant by registered or certified mail, return receipt requested. *See* Tex. R. Civ. P. 106(a)(1), (2). In the case of a limited liability company, the citation must be addressed to the company's manager or registered agent. *See* Tex. Bus. Org. Code Ann. § 5.201(a)-(b), § 5.255(3). If service is not perfected within 90 days after a complaint is filed, and there is no showing of good cause for the failure to effect such service, a court may either dismiss the action without prejudice or order that service be made within a precise time. *See* Fed. R. Civ. P. 4(m).

The executed Return of Service filed by Plaintiff with respect to Micheal Williams states that a copy of the summons and Verified Complaint was delivered on November 15, 2023, to "the defendant's wife, Tannti Williams" at "4819 CARMEL COURT, COLLEYVILLE, TX 76034." Doc. 11. While Rule 4(e) permits service on an individual by leaving copies at the individual's home with a person of suitable age and discretion or with an authorized agent, but there is no indication that the address noted in the Return of Service is Micheal Williams' home. According to Plaintiff's Verified Complaint, Micheal Williams' home or residence where he can be served and located is "4912 Shadowood Rd., Colleyville, TX 76034," which differs from the address where the process server left a copy of the summons and Verified Complaint.

Regarding 3i Contracting, LLC, Plaintiff's Complaint and the executed Return of Service filed by Plaintiff both indicate that 3i Contracting, LLC's registered agent for service of process is the Law Firm of Shannon Anthony Holmes, PLLC located at 8585 N. Stemmons Fwy, Suite 148M, Dallas, Texas 754247. Because the Law Firm of Shannon Anthony Holmes, PLLC is a limited liability company, service would have been proper if a copy of the summons and

Complaint was delivered to "an officer, a managing or general agent, or any other agent authorized . . . to receive service of process." Fed. R. Civ. P. 4(h); Tex. Bus. Org. Code Ann. § 5.255(3). Here, the Return of Service here indicates that 3i Contracting, LLC was served by "delivering to is Registered Agent, SHANNON ANTHONY HOLMES, PLLC by personally delivering to its Authorized Employee, KARMINA VALLADARES" a copy of the summons and Verified Complaint. Doc. 10. There is no indication from the Return of Service, however, that Karmina Valladares is an *authorized agent* of Shannon Anthony Holmes, PLLC, and the conclusory statement that this person is an "authorized employee" is not sufficient for the court to conclude that she is an agent authorized to accept service of process on behalf of Shannon Anthony Holmes, PLLC, particularly given the lack of facts in the Return of Service supporting this conclusion.

While insufficient service of process and concerns regarding personal jurisdiction over Defendants do not preclude the granting of a preliminary injunction, particularly if it appears that service of process issues can be cured, a preliminary injunction does require notice to be effective and enforceable. *See Whirlpool Corp. v. Shenshen Sanlida Elec. Tech. Co., Ltd*., 80 F.4th 536, 542-43 (5th Cir. 2023) (citing Fed. R. Civ. P. 65). Additionally, for any default judgment entered in this case against Defendants to be enforceable, service of process must be valid. *See Carimi v. Royal Carribean Cruise Line, Inc*., 959 F.2d 1344, 1345 (5th Cir. 1992) ("If the service of process in this case was insufficient, we must reverse the district court's grant of default judgment in favor of Carimi."). In light of the court's concern's regarding the validity and sufficiency of the service effected as to Defendants, the court **sets aside** the clerk of court's entry of default (Doc. 13).

As more than 90 days have passed since this lawsuit was filed, the court also **directs** Plaintiff to cure the service deficiencies noted by effecting service on Defendants by **April 15, 2024**, or show good cause in writing by **April 15, 2024,** for the failure or inability to effect service. The Returns of Service filed by Defendants **must** also clearly show that service of process conformed with Rule 4 and include supporting facts. *Failure of Plaintiff to effect service or show good cause by this date will result in dismissal of this action without prejudice pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.*

## V.      Conclusion

For the reasons herein explained, the court **denies without prejudice** Plaintiff's Motion (Doc. 2) and **denies** its request for a hearing (Doc. 14). Plaintiff is also **directed** to cure the service of process deficiencies noted by effecting service on Defendants by **April 15, 2024**, or show good cause in writing by **April 15, 2024,** for its failure or inability to effect service.

*Further, Plaintiff's continued failure to comply with applicable rules of procedure, whether local or federal, will result in either: (1) the dismissal without prejudice of this action pursuant to Federal Rule of Civil Procedure 41(b) for failure to comply with a court order; (2) the noncompliant filing being sua sponte stricken; or (3) other sanctions against Plaintiff, its counsel, or both, as the court deems appropriate, as such failures interfere with the court's ability to effectively manage the proceedings in this case and other cases on its docket. It is not incumbent on the court to educate litigants in a case.*

**It is so ordered** this 13th day of March, 2024.

Sam A. Lindsay
United States District Judge